## ESTATES TAIL—DEVISES—LIMITATIONS—PLEADING.

[Jackson Circuit Court, June 4, 1897.]

\* WILLIAM L. DARLING ET AL. v. JOHN HIPPEL.

**1. RULE TO ESTATES TAIL IN OHIO.**

There is nothing in the policy of the law of Ohio to discourage estates in fee tail further than the rule laid down by the courts, that when language conveys equally well two different estates, that construction will be placed upon, it which will confer an estate in fee simple in preference to an estate in tail.

**2. WILLS LIMITING ESTATES TO FEE TAIL.**

An estate in lands created by will or deed which, by the granting clause, would be an estate in fee simple may be limited by the *habendum* clause to an estate tail.

**3. WILLS—DEVISE CREATING ESTATE TAIL.**

A will devising lands to testator's son " to be held and enjoyed by him and the heirs of his body lawfully begotten forever," creates an estate tail and not in fee simple, and the devisee cannot by deeding away the lands so devised to him cut off his heirs.

**4. SAME—INTENTION AS AGAINST LANGUAGE.**

Where the language in the granting and *habendum* clauses of a will is such that it creates an estate tail in the lands devised, an intention to create an estate in fee cannot be construed out of other clauses in the will unless such intention be clearly and unmistakably expressed.

**5. CONSTRUCTION OF WILLS—PAYMENT OF TAXES BY DEVISEE.**

Where the language of a will is such that it creates an estate tail in lands devised, a proviso that the devisee " shall pay all taxes which may accrue upon said lands after he arrives at the age of twenty-one years," is not sufficient to establish an intention on the part of the testator to devise such lands in fee simple.

**6. PROVISION EMPHASIZING PREVIOUS DEVISES.**

A will devising the landed estate to testator's three sons, to one about eighty acres, to another about seventy-eight acres and to the third about eighty acres, with the *habendum* clause above stated, creating estates tail, to vest

---

\* The judgment of the circuit court in this case was affirmed by the Supreme Court, unreported, in 60 Ohio St., 591.

*J. W. Bannon, Jno. T. Moore* and *T. A. Jones,* for plaintiff in error in the Supreme Court, cited:

Estates Tail: Collins v. Collins, 40 Ohio St., 353, 363; Bierce v. Bierce, 41 Ohio St., 241, 256; Niles v. Gray, 12 Ohio St., 320, 327; Piatt v. Sinton, 37 Ohio St., 353, 355; Sec. 5970, Rev. Stat. (1 Curwen, 145); Raymond v. Railway Co., 57 Ohio St. 271 [48 N. E. Rep., 1093].

Devisee, charged with payment of money: 2 Redfield, Wills, 704; Tiedeman Real Property, Sec. 37, p. 25; Decker v. Decker, 3 Ohio, 166.

Probate of wills: Sec. 5942, Rev. Stat.; 3 Chase, Sec. 7, page 1786.

Title by adverse possession: Yetzer v. Thoman, 17 Ohio St., 130, 134 [91 Am. Dec., 122]; Tiedeman on Real Property, Sec. 699: Smith v. McKay, 30 Ohio St., 409, 417, 418; Waite's Actions and Defenses, 662, 3, 4, 5; Secs. 5779 and 5780 (S. & B.), Rev. Stat.; 67 O. L., 116; Rhea v. Dick, 34 Ohio St., 420; Burnet v. Cincinnati, 3 Ohio, 73 [17 Am. Dec. 582]; Spiller v. Heeter, 42 Ohio St., 100; 2 Am. & Eng. Ency. Law (1 Ed.), 306-7; Schulte v. Beineka, 6 Dec., 529 (4 N. P. 207); Sternberger v. Ragland, 57 Ohio St., 148 [48 N. E. Rep., 811]; Bridenbaugh v. King, 42 Ohio St., 410; Secs. 5779 and 5780, Rev. Stat.

*John M. McGillivray,* for plaintiff in error, cited:

Estates fee and tail: King v. Beck, 15 Ohio, 556, 563; Smith v. Berry, 8 Ohio, 365; Thompson v. Hoop, 6 Ohio St., 480; Niles v. Gray, 12 Ohio St., 320; Piatt v. Sinton, 37 Ohio St., 353; Coonrod v. Coonrod, 6 Ohio, 114, 116; Young v. McIntyre.

upon the death or marriage of testator's wife, is not affected or the estates changed to fee simple by a provision following in another part of the will, that: "It is my will and desire and I wish to be distinctly understood that the preceding items contain my last will and testament upon this express condition, that my now wife shall continue to be a widow, after my decease, during her natural life, but in case my said wife should afterward marry, then and in that case it is my will and desire that all my landed estate shall be equally divided between my three sons and all other property divided as aforesaid as near as the manner pointed out in the respective items as the circumstances will admit."

7. PLEADING—RULE AS TO ADVERSE POSSESSION.

In order to make the defense of adverse possession for more than twenty-one years available, on demurrer, in an action of ejectment, it should appear from the pleadings that the occupying claimant held by a claim of title in fee, and that the statute which ran against him would be effective as to all who held held after him, either by deed or by claiming under the statute of descent.

8. STATUTE OF LIMITATIONS—CONVEYANCES BY OWNER OF FEE TAIL.

The statutes of limitations will not begin to run against the right of action of the heirs of one who being entitled to a fee tail in land attempted to convey the same in fee simple, until the death of the grantor, and the right of action of the heirs accrues.

9. ADMISSION OF WILLS TO PROBATE—IRREGULARITY.

Under a statute requiring the probate court to set out the testimony and proof in admitting wills to probate, the failure to do so, while irregular, does not make the proceeding a nullity; and where the court had jurisdiction the proceeding cannot be collaterally attacked.

10. EJECTMENT—PLEADINGS—INSUFFICIENT DENIAL.

An allegation in ejectment that plaintiffs have a legal estate in and are entitled to the possession of premises sued for, is not sufficiently denied by an answer alleging that the person under whom plaintiffs claim was never in possession of the premises as owner thereof, and had no title thereto, legal or equitable, and that "neither the legal or equitable title to said premises ever vested in said plaintiffs, in so far as the records of this county disclose, and defendant believes and avers that neither they nor either of them possess a title to said premises not of record; that they never were in possession of said lands nor possessed nor procured any title thereto."

3 Ohio, 301; Parker v. Parker, 13 Ohio St., 95, 105: Ball v. Foreman, 37 Ohio St., 132, 141, citing Flagg v. Eames, 40 Vt., 16 [94 Am. Dec., 363]; Moore v. Lewis, 2 Circ. Dec., 548 (4 R., 284); Ewing v. Standifer, 18 Ala., 400.

Powell & Eubanks, for defendant in error, cited:

Estates in fee and tail: Pollock v. Speidel, 17 Ohio St., 439; 3 Jarman on Wills (5 Ed.), 89; 1 Washburn's Real Property (5 Ed.), 110; Lessee of Hall v. Vandergrift, 3 Binn., 373; Allin v. Bunce, 1 Root, 96; Chesebro v. Palmer, 36 Atl. Rep., 42 [68 Conn., 207]; Good v. Good, 2 Marsh. Eng. Rep., 107; Jesson v. Wright, 2 Bligh, 1.

Construction: Collins v. Collins, 40 Ohio St., 353; Parker v. Parker, 13 Ohio St., 95, 105, 110; 3 Jarman on Wills, 706, rule 12; 1 Ib., 617; 3 Ib., 707, rule 16; 3 Ib., 22; 3 Ib., 24; Niles v. Gray, 12 Ohio St., 320.

Probate of wills: 2 Redfield, Wills, 55; Holman v. Riddle, 8 Ohio St., 348 Mosier v. Harmon, 29 Ohio St., 220.

Error—Presumptions; 1 Greenl. Ev. (8 Ed.), 25; McClelland v. Miller, 28 Ohio St., 488.

Ownership; Rapalje & Stewart's Law Dictionary; 17 Am. & Eng. Ency. Law; 299, 305; Frank v. Arnold, 35 N. W. Rep. 453 [73 Iowa, 370]; Wright v. Bennett, 4 Ill.. 258; Illinois Trust Ins. Co. v. Mfg. Co., 6 Ill., 267; Jariott v. Vaughn, 7 Ill., 132.

Limitations: Holt v. Lamb, 17 Ohio St., 374; Carpenter v. Denoon, 29 Ohio St., 379; McArthur v. Scott, 5 O. F. D., 347 [113 U. S , 340; 5 S. Ct. Rep., 652]; Salmans v. Davis, 29 Mo., 176; Barrett v. Stradl, 41 N. W. Rep. 439 [73 Wis., 385; 9 Am. St. Rep., 795], Mettler v. Miller, 22 N. E. Rep., 529 [129 Ill., 630]; Pickett v. Pope, 74 Ala., 122; Meller v. Snowman, 21 Me., 201.

**11. ERROR—BILL OF EXCEPTIONS—JOURNAL ENTRIES.**

Where a case is submitted in common pleas court on demurrer and an agreed statement of facts, on error to the circuit court, there should be a bill of exceptions, containing the facts to be reviewed, or, if not, such facts should be recited in the journal entry.

**12. STATEMENT OF FACTS SHOULD BE INCLUDED IN BILL OF EXCEPTIONS.**

A paper containing an agreed statement of facts not included in a bill of exceptions, and not identified in the journal entries of the trial court, cannot be considered by the reviewing court.

CHERRINGTON, J.

This cause was submitted at the December term of the Jackson county court. We have considered the cause, and we now dispose of it.

This case was what is known under our code as real action. The petition is in the usual form. The answers contains three defenses: the first sets out that James Henderson Darling, some time in the year 1831 and shortly thereafter, claimed some title to or interest in the real estate described in the petition, basing his claim upon what he assumed to be the record of a will claimed to be executed by his father, Timothy Darling, then deceased, and he says the only record touching such matter is as follows, setting out a copy of the will, and the admission of the same to probate court of Jackson county. There is the further averment that in point of fact neither the legal or equitable title to said premises was ever vested in said plaintiff, and defendant avers that they or any of them never were in possession of said lands, nor possessed or procured any title thereto. There is the further averment that on November 7, 1830, said James Henderson Darling was a minor and unmarried, but in 1833 he married the mother of plaintiffs, as defendant believes and avers, and afterwards during the lifetime and widowhood of said Elizabeth Darling, by deed duly executed and delivered, sold and conveyed whatever land and interest could be conveyed by the following description, to-wit: the northeast half of the northwest quarter of section number four, of township number seven, of range number eighteen, in Jackson county, Ohio.

The pleader evidently intended to make two points in this first defense; first, by setting out the will of Timothy Darling, and claiming also in argument that James Henderson Darling took a fee simple, and subsequent to that time deeded all his interest away, leaving nothing to these plaintiffs, and the further averment of the denials that we have recited, by reason of the fact that there was no proper admission to probate of this will. That was the claim made in argument; that inasmuch as the statute at the time this was admitted to probate required all the proof as to the capacity of the testator to be spread on the records, and there being an absence of that, there was no admission to probate.

The second is merely the statute of limitations of twenty-one years. Some averments claimed by way of estoppel, but it is not claimed in argument that there was any estoppel, and I take it that the only claim is the statute of limitation, twenty-one years.

There is a third defense, which amounts to a denial. The defendant admits that he is in possession of the premises described in the petition, and he denies each and every other averment in said second cause of action of said petition.

There is a reply, which says that the plaintiffs, William L. Darling, Henry C. Darling, Charles J. Darling, Peter B. Darling, Joseph R.

Darling v. Hippel.

Darling, Virginia C. Martin and Malinda S. Eubanks are the sons and daughters, and the said Frances Springs is the granddaughter, being the only child of a deceased daughter, of said James Henderson Darling, recently deceased.

Timothy Darling was in his lifetime the owner of the premises; he died testate, and his last will and testament, duly admitted to probate and record, is set forth and copied in the answer.

The premises are part of the premises devised in the fourth item of said will. But for this averment in the reply there must have been considerable doubt as to whether or not the property claimed in the petition was the property devised by the fourth clause of the will.

The widow of Timothy and mother of James Henderson Darling never remarried, and she has been dead for many years.

The deed, dated July 7, 1838, and recorded in deed book C, page 314, of James Henderson Darling and wife to John D. James recited tha said grantors "do hereby demise, release and forever quitclaim unto th said John D. James, his heirs and assigns forever all our title, interes and estate which we now have or have in expectancy, legal or equitable in the following premises, witn the appurtenances, situated in an bounded as follows, to-wit: one-half section willed to said James Henderson Darling by his father, it being the same land on which h lived at his death, to-wit: the northeast half of the northwest quarter of section number four (4) of township number 7, of range number 18 of lands lying and being in Jackson county, state of Ohio." It was intended by said deed to convey according to its terms the same premises mentioned ard devised in item four of said will of Timothy Darling.

Plaintiffs deny that said Darling had no title. The said James Henderson Darling died on November 26, 1895, and the plaintiffs herein are the only heirs of his body. That of course is to say that the statute did not begin to run against these plaintiffs until the death of their ancestor.

There is a second reply to the second defense in which they deny that defendant, nor any of his predecessors, held possession of said premises, adverse to these plaintiffs prior to the death of said James H. Darling, and they aver the possession of the defendant has only been adverse to plaintiffs since that time, and on the issue thus made the case went to trial before the court, parties having waived a jury, on an agreed statement of facts, which resulted in judgment for the defendant.

The petition in error contains substantially two causes: One is that the court erred in overruling the demurrer to the first and second defenses in the answer, and the judgment of the court was contrary to the evidence.

I might have stated that there was a demurrer interposed to the first and second defenses which the court below overruled, and exceptions taken.

It was stated in the argument of this cause in this court that the whole matter depended upon the construction to be placed upon the fourth clause of the will of Timothy Darling. No doubt it was upon the construction to be placed upon that, together with the agreed statements of facts showing that the statute of limitations did not begin to run until the death of the father of plaintiffs, which took place in 1895, consequently was no adverse possession. It was on this that the court below decided the case. Now, what is the fourth clause of the will?

"It is my will and I do hereby give and bequeath unto my son, James Henderson Darling (at the death or marriage of my wife, Elizabeth Darling, his mother), the half quarter section of land on which I now live, to be held and enjoyed by him and the heirs of his body lawfully begotten forever; provided that my said son shall pay all taxes which may accrue upon said lands after he arrives at the age of twenty-one years."

It is claimed by counsel for defendant that by this clause of the will James Henderson Darling took a fee simple, and having deeded it away, that the plaintiffs, of course, have no right, there being nothing for them to inherit from their father. On the other hand it is claimed that James Henderson Darling simply took a fee tail, and that he could dispose of nothing further than the interest he took by this will.

Now, the case was argued to the court in Jackson county, and submitted to us on papers which we have examined with a good deal of care since, and it is of a great deal of importance, yet we have had no difficulty in coming to the conclusions we think correct. In the first place, a great deal is said in the Ohio reports, and by counsel too, about the policy of the law upholding estates in fee simple and discouraging estates in fee tail. Now, all that can be said on that subject is simply this, and this is what the judges who have spoken on that subject in Ohio say: That while language equally well conveys two different estates, that construction will be placed upon it which will confer an estate in fee simple, in preference to an estate in tail Section 4200, Rev. Stat.,. only recognizes estates in tail. Then why argue that there is anything in the policy of the law to discourage them, further than as I have stated. We have our views on that point.

What does that item convey,—what interest does it convey? "I do hereby give and bequeath to my son, James Henderson Darling, * * * the half quarter section on which I now live." For what purpose, and how to be held? "To be held and enjoyed by him and heirs of his body lawfully begotten forever." It won't do to stop with the granting clause of this,—"I hereby give and bequeath," etc. In order to determine what the testator gives and bequeaths, the *habendum* clause that is recorded tells how he is to have, hold and enjoy it. The purpose of the *habendum* clause is to describe the character of the estate conveyed by the granting clause.

That matter is treated in 1 Devlin on Deeds, Sec. 213: "The office of the *habendum* is to define the estate that the grantee is to take in the property conveyed," and several of the sections following, notably 220: "While the *habendum* cannot abridge an estate granted, yet where the granting clause does not mention the estate conveyed, the *habendum* may have the effect of declaring the intention, and may overcome any presumption that in its absence would properly arise from the defect in the preceding clause." Then there is a note on page 215 to Sec. 215, which gives a lengthy extract from Montgomery v. Sturdivant, 41 Cal., 290, which we think is a strong case on the point. Temple, J., delivering the opinion of the court, said: "If the *habendum* were entirely omitted the deed in question would undoubtedly have conveyed an estate in fee-simple and it is, therefore, contended that the language of the *habendum* which attempts to limit the estate granted to a life estate is repugnant.

Independently of the statute, the common law rule was that a deed like this, without the *habendum*, would convey a life estate only. The

Darling v. Hippel.

estate, though different, was just as definite as that under the rule of the statute. If the argument of counsel were correct, the result would have been that the grant could not have been enlarged by the *habendum*. Yet we will know that where the formal parts of a deed are all used, this was the customary mode of conveying, and is still often followed. The rule of common law was only intended to apply to conveyances in which the extent of the ownership of the grantee in the thing granted was not defined in' the conveyance. The statute rule was merely intended to take the place of the common law rule,"—referring to the California statute: "Neither was intended to override the express intention of the parties. The office of the *habendum* is to limit and define the estate which the grantee is to have in the property conveyed. It is not an essential part of the deed, but has generally been used, and in some states the form adopted in this case is in general use."

Now, that authority, independent of anything else, would be sufficient, we think, to justify the court in holding that Henderson took a fee tail simple. But our Supreme Court, we think, has decided this question in Pollock v. Speidel, 17 Ohio St., 439. The first clause of the syllabi is as follows: "Where lands are conveyed by deed to 'A, ·the heirs of his body and assigns, forever,' the grantee takes an estate tail." That is very nearly with this case, and precisely so, we think, in part. An estate in fee simple, as is well understood, is the full and absolute estate in all that can be granted.

Now take the fourth item. This estate is to be enjoyed by him, James Henderson Darling, and the heirs of his body and lawfully begotten forever. It would occur to any one of thought that that does not convey an absolute estate, because it is to be enjoyed in a limited degree; there is a limitation upon the holding and enjoyment of that estate. No one but his true heirs can inherit. All collateral heirs are cut off, and therefore it does not convey an absolute estate, an estate in fee simple. These plaintiffs took under the statute, not from James Henderson Darling, but by descent from their grandfather. The terms of this deed are such as to vest in the grantee an estate of inheritance. Had the conveyance been to the grantee, his heirs and assigns forever, without designating any particular class of heirs, it would have been in the usual form of conveyances of fee simple, but it was to the heirs of his body, and thus excluded collateral heirs. These words of limitation we are not at liberty to disregard. We think we are not at liberty to disregard the words of limitation in this fourth clause of the will. So by the language itself we find an estate tail was conferred on James Henderson Darling. But it is said again that if that should be the view the court should take of the case, the language used in this will clearly shows the intention of the testator to have devised to James Henderson Darling a fee simple. If there be any such intention discovered, as a matter of course, it should control. The sole purpose in considering wills, as far as possible, is the intention of the testator.

From this provision, providing that my said son shall pay all taxes after he arrives at the age of twenty-one years, it is argued that it appears it was the intention of the testator to devise a fee, and authority has been presented showing that there is such a rule, as is stated in Decker v. Decker, 3 Ohio, 157, 167: "A devise of the fee has been considered as sufficient to show an intention in the testator to create a personal charge, while a devise of an inferior interest, as an estate for life, is taken to indicate an intention to charge the land, and not the

person of the devisee." I take it that that is the rule where there is a substantial devise to some one, and also where there is some uncertainty from the language used as to the estate devised.

We think that the words used by the testator in making the devise are too plain to resort to any such rule. But it is said further, and insisted upon, that the language used in the latter part of the fifth clause of this will indicates the intention on the part of the testator to confer a fee :— "It is my will and desire and I wish to be distinctly understood that the preceding items contain my last will and testament upon this express condition that my now wife, Elizabeth Darling, shall continue to be a widow, after my decease, during her natural life, but in case that my said wife should afterward marry, then and in that case it is my will and desire that all my landed estate shall be equally divided between my three sons, viz: William, Derrick P. C. and James H. Darling, and all the other property divided as aforesaid as near the manner pointed out in the respective items as the circumstances will admit."

Now, if that stood alone, and it could be inferred from the language used that James Henderson Darling was to have and own the property, in case his wife should marry again, might have considerable effect, probably a controlling effect, in reflecting upon his intention when he made the fourth item. But we think that refers not to the estate, but simply to the real estate conveyed. The devises are, in the first item he gives to one of his sons about eighty acres, in the second about seventy-eight, and in the fourth about eighty acres, but we think there can be no mistaking what that means, when you refer to the will again. In each of the items, second, third and fourth, where he makes these devises, is in parentheses the following: "At the death or marriage of my wife, Elizabeth Darling, his mother." Now take the fourth item again: "It is my will, and I do hereby give and bequeath unto my son, James Henderson Darling (at the death or marriage of my wife, Elizabeth Darling, his mother)," etc. So that has the same contingency that he refers to in his fifth clause. In other words, James Henderson Darling is to take whatever this fourth item gives him at the death or marriage of his mother. Now, why is it put: "I wish to be distinctly understood that the preceding items contain my last will and testament upon this express condition that my now wife, Elizabeth Darling, shall continue a widow," etc.? Why is it put therein each of the items before? It is put there simply to emphasize it, not to explain, but to leave no question in the mind of any one interested that the interest given to each of these sons is to vest in them at the death, or is to vest in them on the marriage of his wife. We do not see anything in the language used in this will that controls the leading effect of the language, which, as I have said before, gives an estate in tail simply.

Now, how stands the record in these courts? I see there is one assignment of error in the petition in error that the judgment of the court is against the evidence. Our attention was not called to the journal entries when the case was argued, and we were little surprised to find the difference of them when we referred to them.

"This day this cause came on to be heard and the plaintiffs and the defendant each waived the right to trial by jury, and the said cause was submitted to the court upon the pleadings and an agreed statement of the facts ; on consideration whereof, and being fully advised in the premises, the court doth find upon the issues joined in favor of the defendant, and that the plaintiffs are not seized of the estate in said

premises in manner and form as the said plaintiffs have in their petition averred.''

Then this is the entry as to the hearing of motion: "And thereupon came the said plaintiffs and filea their motion to set aside the finding and judgment herein for the reasons and upon the grounds set forth in said motion; and the said motion was submitted to the court, and the court on consideration whereof, and being fully advised in the premises, doth overrule said motion, to which ruling of the court in overruling said motion for a new trial the plaintiffs except.''

There is no permission to prepare a bill of exceptions, and there is no bill of exceptions. I take it that this paper, which is an agreed statements of facts, is the evidence that was referred to in the journal entry. But it is too indefinite. It simply says "upon the issues joined and an agreed statement of facts.'' The proper way was to have had a bill of exceptions. If the facts had been recited in the journal entry, that would have been sufficient. It would probably have been sufficient if there had been added to this statement "upon an agreed statements of facts, which is here referred to, marked 'A' and made part of this entry.'' That is a pretty loose practice, and a practice which should not be tolerated.

So I take it that upon these matters of fact which are spread out in this agreed statement of facts, the common pleas court decided this case, and which we are not permitted to look at. We cannot see that the judgment of the court was against the weight of the evidence for that reason. This court would have to presume that the judgment of the court below was correct as far as this matter of evidence was concerned. So that regulates the matter simply as to whether or not the court below was correct in its ruling on the demurrers.

I will say something as to this second defense. I have already stated that the second defense was simply the statute of limitations of twenty-one years. It says that on October 2, 1843, one John D. James, having been previously placed in possession of the premises described in the petition, sold and conveyed the same by warranty deed in fee simple, to one John Newman, who afterwards sold and conveyed said premises, and so on, from one to another, until the present occupant, who has been in possession fifty years. Therefore they say that these parties are barred by the statute of limitations.

We all understand that where a party occupies real estate openly, continuously, notoriously and adversely for a period of twenty-one years, that he can hold it against the whole world, especially against that portion of the world that had an opportunity to make a claim to it. Now, with the exception of this second defense, it will be seen that counsel have not set out the facts, and I suppose that is because they thought it unnecessary, still, it is proper enough to conform to the facts in the case. They do not set out that James Henderson Darling took a fee simple in his real estate, and that consequently the statute which begun to run against him would be effective as to all those who held after him, and either by deed or under the statute, by claiming under the statute of descent. In other words, it does not say that these plaintiffs had at any time been in possession, that they might have proved the statute running against them, or could claim, in other words, possession of this property. And until it does, we think that it does not state a good defense; and we think the court was wrong in holding that it was a good defense. No doubt the court found that James Henderson Darling died in 1895,

and that the statute did not begin to run against these plaintiffs until his death. I am alluding to the terms of this second defense. We do not think it states a good defense.

Now, as to the first defense: I have already stated in opening the case that it was the intention of the pleader in this answer to make two questions, first, the setting out of the will, claiming that under it James Henderson Darling took a fee simple, and the further averment that he had disposed in his lifetime of all his real estate, and that there was nothing left for these parties to inherit, and consequently by this denial we raise the question, I think, that there was a defective admission to probate. Now, I could say nothing further than I have already said, as to the first point. We think James Henderson Darling did not take a fee simple.

As to the denial, it is as follows: "The said James Henderson Darling, as a matter of fact, was never in possession of said premises as. owner thereof, and had no title thereto legal or equitable. Neither the legal or equitable title to said premises ever vested in said plaintiffs, in so far as the records of this county disclose, and the defendant believes and avers that they nor either of them possess a title to said premises not of record; that they never were in possession of said lands, nor possessed nor procured any title thereto."

We think that that does not make a square denial of the averments of the petition. As I before stated, the statute at that time required the court to set out testimony and proof, in admitting a will to probate. It was certainly very irregular in the court failing to do so ; but that does not make the action of the court a nullity, of no importance. The court had jurisdiction of the matter in hands, and the matter is not directly attacked. So we hold that the first defense does not constitute a defense; and for the reasons stated, this judgment will be reversed, and upon the grounds that the court erred upon was in overruling the demurrer to the first and second defense.