TilgiuiaN, C. J.,
(after stating the case,) delivered the opinion of the court as follows:
The first point made by the plaintiff’s counsel, is, that the right of common was not confined to the purchasers of the town and out-lots, but was reserved for the use of all the citizens of the state; consequently, it was the property of the state, and subject to be disposed of, at the pleasure of the legislature. But it really appears to me, that the meaning of the law is too plain to admit of argument. When a reservation was intended, for the use of the state, it was so expressed. The land necessary for public buildings, &c. was to be reserved for the use of the state; but the one hundred acres were to be for a common pasture. We can easily conceive, that this right of common might be of great service to the inhabitants of the town, or the residents on the out-lots. But that a right of common in one hundred acres of land on the Allegheny river, should be reserved for the use of all the citizens of Pennsylvania, is an absurdity too great to be attributed to the legislature; nor are there any words in the act, from which such an intention can, with any plausibility, be drawn. It is not expressly said, for whose use the common was to be; but having directed that a town should be laid out, and the lots sold, the ob- . vious meaning is, that it should be for the use of the holders of those lots. Whether the right should be' confined to the owners of town lots, or embrace the owners of out-lots also, is another question, in which the plaintiffs have no concern. The supreme executive council did not exceed its powers in laying out this common, and granting it to the purchasers of lots. It was so ordered by the law under which they acted, and no doubt, in consequence of this privilege th^lots brought a better price; and thus the object of the legislature, to raise as much money as possible for the payment of the public debts, was answered. The defendants, then, have paid value for the right which they claim. This right of common is an estate well known to the law. It is an incorporeal hereditament, giving to the owner of one tract of land, the privilege of common in other lands; a privilege annexed t'o the land, and passing by the conveyance of the land to which it is annexed. Nevertheless, the property in the soil remained in the commonwealth, subject to the right of common; and, if the commoners had released their right of common, the estate of the commonwealth *33 would have been absolute* By this grant, then, to the trustees of the university, all the- right of the commonwealth passed; that is to say, the right of the soil, subject to the right of common. But it was contended by the counsel for the plaintiffs, that supposing the defendants had a right of common, the one hundred acres were more than was necessary for that purpose, and the jury should have been instructed, that if they thought so, they ? hould find for the plaintiffs for the surplus. But in this, I think, the learned counsel was mistaken. In England, when lords of manors, having<,a great extent of waste ground, enfeoffed, auy one of part of the arable land, it was usual that the feoffee should have common in such wastes, as incident to his arable land, and this was for the interest of both lord and tenant; because the arable laud could not be tilled or manured without beasts, and they could not be supported without pasture. . If the tenant was disturbed in bis enjoyment of common, he had remedy by writ of assise. But sometimes tenants 'were unreasonable, and h&rrassed their lords by actions of assise for enclosing and cultivating part of the wastes, when there was sufficient left for common. This was an injury to agriculture, and therefore it was provided by the statute of Merton., (20 H. 3. c. 4.) that it should be inquired by assise, whether there was sufficient common, or not, and if there was, the lord might improve the residue. And by the statute of Westminster, 2, (13 E. 1. c. 46.) it was further provided, that the statute of Merton should not only bind the lord’s tenants, but neighbours also, who claim common pasture as appurtenant to their tenements. But these statutes were not applicable to Pennsylvania, where the relation of lord and tena».', rever existed. I know of very few instances of rights of common. And, in the case before us, it is evident, that an inquiry whether there be sufficient common for the present inhabitants of Jlihp.heny town, exclusive of the forty acres claimed by the pJaimiiis, would he altogether improper and unjust. The extent of the common ground was exactly ascertained by metes and bounds, and the legislature, who had a right to judge, deemed it not more than sufficient. The purchasers of the lots, contracted on that assurance, and have a right to insist, that the quantity shall not be lessened. A specific contract of this kind, would not fall within the reason of the statute of Merton, even if that statute extended to Pennsylvania, which it does not. The grant of common, in this case, looked forward to future generations. Even if sufficient were left for the present lot-holders, exclusive of the quantity claimed for the university, it might be quite insufficient fifty years hence, when Allegheny may be a populous city. And it would not answer the purpose of the plaintiffs, to take possession of the forty acres now, and restore them, when the increase of inhabitants shall require more extensive grounds for common. The plaintiffs claim the absolute, unincumbered right of soil. Their object is, to build on part of the ground, and soil the remainder; and they have there *34 fore very properly rested their case on this immediate, and absolute right. But, it has been objected, that if this right of common exists, the inhabitants may prostrate the buildings erected for a state penitentiary, by virtue of the act of the 3d of March, ISIS. There is no ground, however, for apprehension on that head. When the law for the erection of the' penitentiary' was passed, the state had the right of soil, subject to the right of common. This right of common, the lot-holders might either release, or modify at their pleasure. ttThe state possesses the inherent power to appropriate to itself, for public purposes, any private property, making just compensation. It is provided by the 9th article of our constitution, (sect. 10,) “ that no man’s property shall betaken, or applied to public use, without the consent of his representatives, and just compensation being made.” Now it is understood, that the Mlegheny lot-holders were of opinion, that the erection of the penitentiary on part of the common ground, was for their interest, without further compensation; and on this understanding, the building has been erected, at a very great public expense. After this acquiescence, the proprietors of the lots are bound. It amounts to a contract. It is equivalent to a release pro tanto. While I am on this part of the case, I may be permitted to suggest, that possibly an accommodation between the university and the commoners, might not be impracticable, or even very difficult. There is no reason to suppose, that the present proprietors of the lots, wish to impede or embarrass the noble design of the legislature, in erecting a university in the western part of the state; or that they are insensible to the great advantage it would be to the town of Mlegheny. Deducting forty acres for the university, there would still be fifty left for a common; and perhaps those forty acres might be so located, as to satisfy both parties. This, however, is but a suggestion, which must not draw the court aside from its duty, to decide according to law. Having considered the pase, certainly with no prepossession unfriendly to the university, I have not been able to entertain a doubt, that the defendants’ right of common is unextin-guished, and unextinguishable, but with their own consent. Before I conclude, it is proper to remark, that on the question, Who are entitled to the right of common, whether the owners of town lots only, or also those of oui-lols, no opinion is intimated; and the court requests, that no inference may be drawn from any expression which fell from the bench in the course of the argument. On further reflection, it is considered as a point of some difficulty, on which neither of us has come to a decided opinion.
Judgment affirmed.