Birchard, C. J.
We think the Court below did not err in overruling the motion for a non-suit. The bill of exceptions does not profess to give all the evidence offered by the plaintiffs in support of the action prior to the motion for a non-suit. We are left altogether in the dark up on that subject, and if any ■ supposablé state of proof connected with what is shown by the first bill of exceptions would have sustained a right of action we ought to presume such proof to have been given, until the contrary appears. A revisory Court never presumes that an inferior tribunal has erred. The presumption is that it has not. Until the contrary is shown by record, every Court is presumed to have acted and decided correctly.' Suppose, then, it was in proof that the plaintiffs below had sold’ and delivered *441 goods, wares and merchandize to the defendant as averred in his declaration, and that the defendent in consideration of the sale and purchase, had, as stated in the bill of exceptions, cially promised to deliver him a wagon before the next harvest, and the time had elapsed without a delivery. Could he set up . this contract which he had thus violated to defeat a recovery for the value of the goods? The answer is palpable. He could not. The moment he disregarded and broke it by neglecting to live up to it, and to deliver the wagon, he lost his right to compel his adversary to abide it, and enabled him to recover back the money or other property paid on his contract, the consideration of which had thus failed. The demand of the wagon in such case was not a preliminary requisite to the right of action. It was the duty of the party engaging to deliver the specific article, to do it by tendering the same to the plaintiff personally, or at his'house, at the time stipulated. He had no right to require a demand of performance from the plaintiff before offering to perform. The parties contracted for no such condition. Both were aware of the terms of the agreement. They understood it alike, and the one who neglected to observe it, did so at his own peril.
The second bill of exceptions presents a vexed question. One upon which there has been conflicting decisions in the Courts of England and of our sister States, and 1 may add in this Court. In Bliss v. Long, Wright’s Rep. 351, if was held upon the circuit, that a witness called to testify what a deceased witness testified on a former trial between the same parties, could not be allowed to state the substance of his testimony. That he was inadmissible unless he could give the words of the witness. And in Smith v. Smith, Wright’s Rep. 643, also upon the circuit, this Court said, that “ unless the witness would undertake to relate exactly what the deceased witness testified, he need not be swornand the witness not being able to do that, was not sworn. _ .
In other circuit cases, both prior and subsequent to these decisions, the rule thus laid down and practiced upon has been *442 departed from, and this case was brought into bank, in order that the question might receive the consideration of all the Judges. The rule that the testimony of a deceased witness who has been examined on oath on the trial of a former action between the same parties, and where the point in issue is the same, is admissible on the second, trial of the action and may be proved by one who heard the evidence, is an useful and ancient rule. 1 Phil. Ev. 230, 231.
Phillips in stating how the testimony of the deceased witness must be proved, refers to two English cases wherein it was ruled by Lord Kennyon that the precise words must be proved and that their mere effect was inadmissible. But upon this he remarks, that this can only mean, at the farthest,, that he must be able to speak to the identical words of the former witness, when it is essential that the identical words should be known. “In some cases, proof of the substance of the former evidence may be as satisfactory as proof of thé identical words, unless the witness can undertake, what is not possible, to deliver the words precisely, with the same manner and in the same tone.”
This qualification of the decision of Lord Kennyon is necessary to prevent the impracticable requisition of the witness’ very words operating with the same result as to deny the existence of the rule itself. To adhere rigidly, as was done in Bliss v. Long, in effect, overrules all cases which admit in evidence what a deceased witness swore on a former trial. I have never heard a witness, in twenty years, who could give any man’s evidence in his precise words. I never saw an Attorney who could pretend to state the precise words of a witness six hours after his testimony had been given, and his assertion that he could narrate verbatim, from memory the whole of a witness’ statement, would, in ninety-nine cases in a hundred, be convincing evidence to man of sense that his word was not to be relied on. If, then, the rule as laid down in Wright’s Reports, and. as stated by Lord Kennyon, were to be taken strictly, it amounts to a total interdict of a most important branch of secondary evidence, a branch of evidence especially important under our *443 system of new trials. The evils flowing from it would, in my judgment, were the law ever so well settled, justify a Court in changing the law.
In Maryland,-Virginia, North Carolina and Pennsylvania, the substance of a deceased witness’ testimony is allowed to be given in any subsequent trial of the cause. Some of the Courts of these States take a distinction between the substance and the effect of the former testimony. “ The substance, say they, may be given, not the effect,” .that is for the Court and jury. • The exact words are not required. I submit that this distinction may have been in the mind of Lord Kennyon, when inferring to the decision in Palmerston’s case. Vide the following cases : Pike v. Cranch, 1 Ld. Raymond, 730; Mayor of Doncaster v. Day, 3 Taunt. 261; Rex v. Jollife, 4 T. R. 285; Montgomery v. Ohio, 11 Ohio Rep. 424; Stark. Ev. vol. 1, p. 892, part 3, sec. 13.
If so, it would reconcile what he said with a practical course, consistent with the efficacy of this rule of secondary evidence. And more especially would it reconcile this species of evidence with the analogies of the every day practice in the trials for verbal slander, perjury and the like, where it is never required that the witness shall do more than give the slanderous words substantially as spoken, or the words substantially upon which the perjury is assigned. A careless thinker may suppose that there is very little difference between the substance of evidence and the effect of evidence, yet in one sense there is a wide distinction between the two forms of expression. For instance the substance of a witness’ testimony in a given case may have been, that he saw A strike B with a club; the effect of it was to prove an Assault and Battery by A upon B. Or the. witness may have said in substance that he was acquainted with A’s handwriting and that the signature to the note he believed to be in A’s handwriting; to state this proof by saying that the witness proved the note to be genuine, would be to give the effect of the evidence, not its substance, and would be inadmissible.
*444 In Smith v. Lowe, 12 Serg. & Rawle, 34, Judge Gibson, though as I think mistaken as to the English rule, with great sense uses this language:
“ By the English law, a person who is called to prove what a deceased witness swore, must undertake to repeat his very words; and not merely to swear to their effect. To do this, would require powers of memory which seldom fall to the lot of any one; and the rule under this restriction, although it might often produce perjury, would be of no practical utility; for no juror of common discretion would believe a witness who should undertake to repeat the very words of another, in relating the manner in which any transaction took place, whether simple or complicated. But this absurdity has been exploded by this Court, and it is unnecessary, in this State, to profess to use the language of a deceased witness, but only to undertake to state the substance of all he swore in relation to the particular transaction.”
In an earlier case, Cornell v. Green, 10 Serg. & Rawle, 16, the same learned Judge said the rule, applied in that degree of strictness stated by Lord Kennyon, would be useless in practice; “ for there is no man, be his powers of recollection what they may, who could in one case out of ten thousand be qualified to give such evidence; and if he should undertake positively to swear to the very words, the jury ought, on that account alone, to disbelieve him.” '
These extracts will commend themselves to every practical mind. If the law of Ohio is not in accordance with them, it is not what it ought to be; but we think the law of the State, its essence and spirit, has always been in accordance with the doctrine of the Pennsylvania Court, and that contrary circuit decisions are to be regarded as departures from correct practice and true principle, rather than evidence of the existence of a well settled rule. See note 442, p. 578, 2d part. Phillips’ Ev. by Cowen & Hill.

Judgment affirmed.