**WELSH, Plaintiff-Appellee, v. WEYRICH, as Trustee, Defendant-Appellee, KRAMER et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 2184. Decided December 17, 1952.

Jacobson & Durst, Dayton, for plaintiff-appellee.

Clarence J. Stoecklein, Robert J. Stoecklein, Dayton, for Arthur G. Kramer and Eloise S. Kramer, defendants-appellants.

Harshman, Young, Colvin & Alexander, Dayton, for The John Hancock Mutual Insurance Company, defendant-appellant.

## OPINION

By MILLER, J:

This is a law appeal from the judgment of the Common Pleas Court, decreeing the plaintiff, Ray Welsh, and the defendant, Charles Weyrich, Trustee, to be seized in fee simple of the real property which is the subject of this action. The same was instituted by the plaintiff who acquired his title from the heirs of John Summers who died testate on April 25, 1895, seized in fee simple of the real property described in the amended petition. The defendant, Charles Weyrich, Trustee, acquired his title through the same chain.

The will of John Summers was admitted to probate on May 31, 1895, the applicable portions of which are the following:

"ITEM 2: I will and bequeath to Ann Kramer, wife of John Kramer, for and during her natural life, and after her death to the heirs of her body, and to their heirs and assigns forever, the two acres and a fraction, * * *."

"ITEM 5: I will and devise and bequeath all the remainder of my estate not heretofore disposed of, both real and personal and mixed, to my brother Charles Summers for and during his natural life, and after his death to the heirs of his body, share and share alike, and to their heirs and assigns forever."

The real estate described in the amended petition is a part of the real property described in Item 2 of the will. The defendants-appellants, Arthur G. Kramer and Eloise S. Kramer, are claiming title to said real estate by virtue of a warranty deed, the chain of which runs back to Ann Kramer, the life tenant, widow of John Kramer, deceased, and her two sons and only heirs at that time. Now, Ann Kramer deceased in

1942, leaving no issue of the body, her two sons having predeceased her leaving no issue. The appellees urge that Ann Kramer's interest in the real estate was extinguished upon her death, and since she left no issue of the body, that the fee vested in the heirs of Charles Summers under Item 5 of the will as the residuary legatees, Charles Summers also having predeceased the testator. The heirs of Charles Summers were determined upon the death of the testator. We think the contention of the appellee to be a correct legal conclusion and in accord with the case of **Gilpin v. Williams et al, 25 Oh St 283,** the first paragraph of the syllabus of which provides:

"A testator devised certain lands to his daughter for life, with remainder after her death to her children, then unborn, forever, without otherwise disposing of the inheritance. Held, the reversion in fee descended to and vested in the heirs of the testator, at his death, subject, however, to divest in the event that the devisee for life should die leaving children surviving her."

But, the appellants urge that even though the fee was vested in the heirs of Charles Summers subject to being divested in the event that Ann Kramer should die leaving issue, still the appellants should not recover for the reason that the heirs of Charles Summers appeared in case No. 16456 in the Common Pleas Court for Montgomery County and agreed to be divested of all claims and interest in and to the property willed by John Summers to Ann Kramer and others. An examination of this case reveals that Mary Summers, widow of the testator, elected not to take under the will and on August 31, 1895, filed an action in partition for her dower interest; that all the heirs at law of Charles Summers, deceased, together with Ann Kramer and John W. Wright, beneficiaries under Item 2 of decedent's will, along with John Kramer, husband of Ann Kramer, were made parties defendant, waived the service of summons and entered appearance either personally or by counsel. A writ of partition issued to the sheriff November 26, 1895. Commissioners were appointed and on February 3, 1896, return was made to the effect that "the property is entire and that no division can be made without manifest injury to the same and that the dower estate of said Mary Summers cannot be assigned and set off by metes and bounds * * *." The commissioners estimated one-third of the rents, issues and profits of all the real estate in the estate at $651.00 per annum and estimated the value of the said real estate, free of dower, $58,450.00. By entry filed July 13, 1896, the Court stated:

"* * * that all of such appraisement and estimating have been made by the commissioners as directed by §5714 'A'

R. S., the court find said proceedings in all respects in conformity to law, and do hereby approve and confirm the same."

The Court then found the value of plaintiff's dower in money to be $3841.20 and made the same a charge on the lands not specifically devised.

On July 20th the Court ordered the heirs of Charles Summers to pay $3709.78 and

"* * * that the said Ann Kramer pay to said plaintiff the sum of $131.42, the amount so ordered paid by her in this cause by a former order of this court and that when said Ann Kramer has so paid the same that the property devised to her by the said John Summers, deceased, shall be divested of the life estate of said Mary Summers, the plaintiff herein, and also divested of all claims of any of the heirs of Charles Summers, deceased."

The lower court found as a special finding of fact, in answer to defendant's interrogatory, that,

"The heirs of Charles Summers, living in 1895, did appear as defendants in case No. 16456 and did agree to be divested of all claims and interests in and to the property willed by John Summers to Ann Kramer and others."

No appeal was taken from the judgment in said dower partition case and no action of any kind has been taken in over fifty years, to change this public judicial record. The trial court made the following conclusions of law which the appellants claim to be error:

No. 3. "That if there was any agreement by the heirs of Charles Summers in said cause No. 16456 to be divested of all claims in and to the property willed by the testator to Ann Kramer under Item 2 of his will, such agreement would not divest those heirs of said Charles Summers who were living on September 8, 1942, of their interests in the real estate described in the amended petition."

No. 4. "That any declaration in said case No. 16456 divesting the heirs of Charles Summers of any claims in and to the property devised to Ann Kramer under the will of John Summers, is coram non judice and is void."

We are of the opinion that the Court erred in its legal conclusion, No. 3, supra. Since we have held that the fee vested in the heirs of Charles Summers upon the death of the testator, it was an estate which could be divested. It was a reversionary fee. The heirs of Charles Summers living in 1895 at the death of the testator held the vested reversion in fee, which was subject to divestiture.

It is said in 33 Amer. Jur. Sec. 195, page 669:

"Reversions are descendible, alienable or assignable by deed, conveyance, and grant, and devisable."

In 31 Corpus Juris Secundum, Sec. 108, page 128, it is said:

"A reversion is devisable, descendible, and alienable inter vivos. A grant of the reversion passes all the rights of the grantor."

If this property was divested by the agreement recited in case No. 16456, then it was not material who the heirs of Charles Summers were upon the death of Ann Kramer on September 8, 1942. As stated supra, the Court found in answer to defendants' interrogatory No. 5 that all of the heirs of Charles Summers agreed to be divested. This being an appeal on questions of law only this factual finding is not subject to reversal as we find the evidence is sufficient to support the conclusion. Such an agreement, we hold, is valid and enforceable in a court of equity.

In 57 Am. Jur. Sec. 1005, page 653, it is said:

"According to most authorities, an agreement between the beneficiaries under a will, for the purpose of avoiding litigation regarding their rights, to adopt a plan for the distribution of the estate, different from that provided by the will is valid and enforcible * * *."

In 7 O. Jur. Sec. 28, page 1010, it is said:

"A parol agreement by heirs after the death of their ancestor, as to the distribution of the estate, both real and personal, which has been executed on one side, may be enforced in equity as against the other side, in so far as such agreement is within the contractual capacity of the parties." Citing Williams v. Pope, Wright, 406.

The evidence reflects that there was a valuable consideration for the agreement. This tract being specifically devised to Ann Kramer, et al., was not subject to the payment of dower because the record shows ample other assets in the estate, not specifically devised, to pay dower debts, expenses and bequests. Hence Ann Kramer, et al, probably objected with the result that there was a compromise whereby she agreed to pay the dower interest on her two acres and the residuary legatees, the Charles Summers' heirs, agreed to relinquish their reversionary interest and other interests, if any, in her estate. It was incumbent upon the heirs of Charles Summers in 1895 to agree who should pay the $3841.20, and in what amount, and failure to do so would have resulted in partition.

The court entry of July 20, 1895, discloses that the payment by Ann Kramer of $131.42 was to be credited "on the sum of $3841.20 ordered paid to the plaintiff by the heirs of Charles Summers, deceased." The $131.42 paid by Ann Kramer and credited to the sum owed by the heirs of Charles Summers, it appears, was sufficient consideration in view of the small

possibility that Ann Kramer's two sons would predecease her.

We are of the further opinion that by their agreement the heirs of Charles Summers estopped themselves and their heirs and assigns from ever asserting an interest in the property devised to Ann Kramer because of said agreement. On the subject of estoppel it is said in **7 O. Jur. Sec. 29, page 1012**:

"It is well settled, as a general rule, that where one party has taken the benefits and secured the advantages of an agreement of compromise and settlement, he will be conclusively estopped, in the absence of circumstances of fraud or unfairness, from asserting any claim against property released or assured by him to the other party to such agreement, inconsistent with such release or assurance. And, as a general rule, where notes have been executed in settlement of a compromise agreement, the maker thereof will be estopped to deny that there was any consideration therefor."

It is said also in **7 O. Jur. Sec. 30, page 1012**:

"An agreement of compromise and settlement is binding upon the parties thereto, and all those in privity with or claiming through or under them."

In Williams v. Pope, Wright's Ohio Reports, 406, the Court held that an oral agreement by heirs after the death of their ancestor, as to the distribution of his estate, both real and personal, which has been partially executed, may be enforced in equity as against a repudiating heir or distributee.

In **Piatt v. Hubbell, 5 Ohio, 243,** the Court was confronted with a case wherein a partition suit was instituted and as in the case at bar an oral agreement was made between the heirs and distributees, including minor heirs. No confirmation or final entry was placed in the court records. Some twelve to fourteen years later an heir sought to repudiate the agreement contending that the minor parties were not affected and that the court proceedings were entirely void. At page 244 the Court says:

"We do not think it necessary to decide what is the precise effect of these proceedings. It is evident the partition was in fact made between the parties in 1814, which at that time was equal; and that all the adult parties took possession of their respective shares, and ever since held them in severalty, built upon, and improved them, on the faith of its validity. This court, in chancery, would not disturb a parol partition, originally fair, in which there had been so long acquiescence, and such acts of confirmation."

In **Walker v. Walker, 16 Abs 272,** the fourth paragraph of the syllabus provides:

590

"One who has voluntarily participated in an adjustment of the affairs of a decedent's estate among the parties in interest may not thereafter be heard to make a claim inconsistent therewith."

See, also, Christ, et al. v. Canal River Co., 32 O. L. R. 331; **Chisholm v. Chisholm, 58 Abs 1.**

The appellees urge that the judgment entry divesting the heirs of Charles Summers of any interest in the property devised to Ann Kramer is "coram non judice" and therefore void and of no effect. Since we have held the agreement is enforceable and those holding under the heirs of Charles Summers are now estopped to deny the same, the validity of this order becomes immaterial. We therefore express no opinion on the same.

The judgment will be reversed and it is the judgment of this Court that the title in Arthur G. Kramer and Eloise S. Kramer be quieted subject to the interest of their mortgagee, The John Hancock Mutual Life Insurance Company. The petition of the plaintiff is dismissed.

HORNBECK, PJ, WISEMAN, J, concur.