LONG ET AL., APPELLEES, *v.* LONG, APPELLANT.

[Cite as Long v. Long (1976), 45 Ohio St. 2d 165.]

(No. 75-356—Decided February 25, 1976.)

168

*Messrs, Brumbaugh, Engelken, Cox & Worster* and *A. Staley,* for appellant.

*Mr. Herbert W. Cox,* for appellees.
*Messrs. Spidel, Staley, Hole & Hanes* and *Mr. Hugh* CORRIGAN, J.

## I.

The unique issue in this case concerns the nature of the interest remaining in the grantor, Henry Long, after the creation by deed of a fee tail estate which was conveyed by the grantor to his son "Jesse S. Long, and the children of his body begotten, and their heirs and assigns forever."

The parties agree that the estate created by the grantor was a fee tail. *Pollock* v. *Speidel* (1867), 17 Ohio St. 439.

Appellant maintains that the interest remaining in the grantor is a "possibility of reverter" which is a descendible, devisable estate at the death of the original grantor of the estate tail. Appellant contends that, upon the death of the first donee in tail without issue, the interest then passes to the heirs of the grantor living at his death, and to their descendants.

The appellees, too, maintain that the interest remaining in the grantor of a fee tail estate is a possibility of reverter. Appellees contend, however, that this possibility of

reverter was not of sufficient quality to descend to an heir until the donee in tail dies without issue. At this point, appellees argue, the possibility ripens into a fee simple estate in the grantor and, where he has predeceased the donee in tail, the estate then passes by the law of intestate succession to his heirs living at the time of the ripening of the possibility.

## II.

Considerable confusion exists in the present case because of the term used to designate the nature of the grantor's future interest in the property conveyed.

At early common law, prior to the enactment of the Statute of Westminster, 13 Edward I. Chapter 1, *De Donis Conditionalibus,* in 1285, the transfer of a fee restrained to some particular heirs exclusive of others, *e g.,* to the heirs of a man's body, created an estate designated a fee simple conditional. 20 Ohio Jurisprudence 2d 278, Estates, Section 43; 4 Kent's Commentaries (13 Ed.) 12-14; *Pollock* v. *Speidel, supra* (17 Ohio St. 439).

The future interest in the grantor of a conditional fee at common law was generally called a possibility of reversion or right of reverter. The usual practice at common law, however, was for the tenant in tail to alien the land conveyed and afterward repurchase, taking an absolute estate in the land which would descend to his heirs generally and prevent any reversion to the donor. To prevent this practice, the statute *de donis* was enacted, imposing a restraint upon the power of alienation by the tenant in tail. Prior to the enactment of the statute, a fee simple conditional became absolute upon the birth of issue. By operation of the statute the tenant now held an estate tail and the donor had a reversion of fee simple expectant on the failure of the issue in tail. The tenant could no longer alien, upon his having issue, but the feud (estate) was to remain to the issue according to the form of the gift, *i. e.,* the issue of the donee in tail took *per formam doni* (by the form of the gift) or from the grantor rather than through any particular tenant in tail. The statute preserved the

estate for the benefit of the issue of the grantee and the reversion for the benefit of the donor and his heirs by declaring that the intention of the donor manifestly expressed according to the form of the deed should be observed. Ohio Jurisprudence, *supra,* at page 278; Kent's Commentaries, *supra,* at pages 12, 13; *Carroll* v. *Olmsted* (1847), 16 Ohio St. 251; *Pollock* v *Speidel, supra* (17 Ohio St. 439).

The real source of the title was the donor, himself, who always retained a reversion expectant upon the failure of issue. *Pollock* v. *Speidel, supra; Richardson* v. *Cincinnati Union Stockyard Co.* (1901), 8 N. P. 213, 11 O. D. 367; *Gibson* v. *McNeely* (1860), 11 Ohio St. 131.

It should be noted that the statute *de donis* did not create the estate tail but rather gave it perpetuity.

More importantly, for purposes of the present case, the statute *de donis* converted the donor's bare possibility of reversion or right of reverter into a reversion or fee simple expectant upon failure of issue. Kent's Commentaries, *supra,* at page 12. This distinction is important because a reversion in fee is a vested interest or estate and is descendible, alienable or assignable by deed or conveyance, and is also devisable. Ohio Jurisprudence, *supra,* at page 356, Section 117; Kent's Commentaries, *supra,* at page 354; *Welsh* v. *Weyrich* (App. 1952), 68 Ohio Law Abs. 584, 123 N. E. 2d 661; *Richardson, supra; Gibson, supra.*

A reversion is the residue of an estate left in the grantor or other transferor, to commence in possession after the determination of some particular estate transferred by him. A reversion arises only by operation of law and is a vested right. Ohio Jurisprudence, *supra,* at page 356; 33 American Jurisprudence 668, Life Estates, Remainders, and Reversions, Section 194.

A reversion arises whenever a person having a vested estate transfers to another a lesser vested estate. Since the reversion is the undisposed of portion of a vested estate, it follows that all reversions are vested interests. A reversion is said to be vested because there is no condition precedent to the taking effect in possession other than the termination of the preceding estates. This does not mean, however,

that every reversion is certain to take effect in possession and enjoyment. The distinguishing feature of the reversion is that it is not subject to a condition precedent to its taking effect in possession, and all other conditions defeating a reversion are regarded as conditions subsequent. 1 Simes & Smith, Law of Future Interests (2 Ed.), Reversions, Sections 82, 90; 2 Restatement on Property 525, Section 154.

A reversion is historically distinguishable from a possibility of reverter in that a reversion arises when the estate transferred is of a lesser quantum than the transferor owns. A possibility of reverter arises when the estate conveyed is of the same quantum as the transferor owns. Simes, *supra,* at page 329, Section 282.

## III.

In Ohio, the term "possibility of reverter" is used to denominate the future interest remaining in the transferor of a "qualified fee." Ohio Jurisprudence, *supra,* at page 357, Section 119; American Jurisprudence, *supra,* at page 681, Section 204.

Ohio cases have held that this interest is not an estate but only the possibility of having an estate at a future time, and that the estate is vested in the grantee, subject to divestment at a future time. *Gilpin* v. *Williams* (1874), 25 Ohio St. 283; *Walker Branch of Methodist Church* v. *Wesleyan Cemetery Assoc.* (1896), 11 C. C. 185, 5 C. D. 326, dismissed without opinion, 39 W. L. B. 384 (1898); *Cincinnati* v. *Babb* (1893), 4 O. D. 464, affirmed, 55 Ohio St. 637 (1896); *In re Vine Street Cong. Church* (1910), 20 O. D. 573.

The possibility of reverter is regarded as a lesser interest than the reversion because of the nature of the fee transferred. The term "qualified fee" is used to designate those fees which descend as fees simple but which will, or may, terminate or be subject to termination upon the occurrence of a stated event. Such fees include fees simple determinable, fees simple subject to condition subsequent, fees simple subject to executory limitation and conditional fees, in those jurisdictions in which the fee tail has been completely abolished and the predecessor

conditional fee is still recognized. Qualified fees do not include the fee simple absolute or the fee tail. See, generally, Ohio Jurisprudence, *supra*, at pages 252-253, Sections 21, 22; Simes, *supra*, Section 281.

Possibilities of reverter and the right of entry for condition broken following a fee simple condition subsequent were not alienable *inter vivos* or devisable prior to the enactment of R. C. 2131.04 (G. C. 10512-4) in 1932. Both, however, appear always to have been capable of descent, and either interest might be released to the holder of the possessory interest in the land. *Gilpin, Walker, Babb, Vine Street, supra.* These interests are clearly distinguishable in their incidents from the reversion which is vested estate, descendible, alienable, assignable and devisable.

There appears to be a disparity of views on the descendibility of possibility of reverters as to the time that the heirs are determined, whether at the grantor's death or at the time of the happening of the contingency. These views are cited and discussed by the parties in the present case, but since they relate to possibilities of reverter and not to reversions, they are not relevant. The important point in this discussion is that the future interest remaining in the grantor of a common-law fee tail estate is an estate designated a reversion and not a possibility of reverter or right of entry.

### IV.

The only remaining issue to consider is whether the Ohio enactment of 1811 (10 Ohio Laws 7),* modifying fee

---

*"AN ACT *to restrict the entailment of real estate.*

"Sect. 1 *Be it enacted by the General Assembly of the state of Ohio.* That from and after the taking effect of this act, no estate in fee simple, fee tail, or any lesser estate in lands or tenements, lying within this state, shall be given or granted by deed or will to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will, and that all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail.

"This act to take effect and be in force from and after the first day of June next.

"* * *

"December 17, 1811."

tail estates, has had any effect on the reversionary interest in the grantor.

In *Pollock* v. *Speidel, supra* (17 Ohio St. 439), this court recognized the continued existence of estates tail in Ohio, subject to the statutory modification enacted in 1811, and now embodied in R. C. 2131.08, which converted estates tail into fees simple in the hands of the issue of the first donee in tail. Subsequent decisions, in *Harkness* v. *Corning* (1873), 24 Ohio St. 416; *Broadstone* v. *Brown* (1873), 24 Ohio St. 430; and *Dungan* v. *Kline* (1910), 81 Ohio St. 371, made it clear that the statutory enactment did not change the nature of the estate tail in the donee in tail from an inheritable estate to an estate for life merely but restricted the entailment to the immediate issue of such donee.

Ohio courts have also recognized the existence of a reversion in the grantor of an estate tail. *Pollock* v. *Speidel, supra* (17 Ohio St. 439); *Gibson* v. *McNeely, supra* (11 Ohio St. 131); *Richardson* v. *Cincinnati Union Stockyard Co., supra* (8 N. P. 213).

In *Gibson* v. *McNeely,* the court held that there was a reversion in fee simple expectant on the failure of an estate tail before its conversion into a fee by operation of the Act to restrict the entailment of real estate. The court, in *Gibson,* held specifically that this reversion expectant on the failure of issue, undisposed of by the will of the testator, passed at his death to his heirs at law then living. The court determined further that the reversion descended through the testator's heirs living at his death to their lineal descendants who took a possessory interest in the devised property on the failure of issue. Clearly, this decision recognized the existence of the common-law reversion as it existed after the statute *de donis,* and the vested nature of the interest in the grantor and his heirs.

In *Richardson* v. *Cincinnati Union Stockyard Co., supra,* the Superior Court of Cincinnati recognized the existence of the fee tail estate in the same form as it existed after the statute *de donis,* subject only to the limitation created in the Act of 1811, which enlarged the estate tail

into a fee simple in the hands of the issue of the first donee in tail. All three judges concurred in the conclusion that the reversion following the fee tail which a testator devised to his daughter after the life estate devised to her mother was a descendible, assignable interest. The court held that the reversion had, in fact, descended to the testator's heirs and had been assigned by some of them to the Cincinnati Union Stockyard Company. The case was complicated by ambiguous language in the will to the effect that, upon the death of the life tenant, if the donee in tail had predeceased the testator without issue, then the property would devolve upon the testator's surviving children. Two judges held that this condition should be interpreted to mean that the testator's daughter took a fee tail estate and the heirs of the testator took by descent a reversion in the estate upon the testator's death, which reversion was subject to divestment by the donee in tail's death with surviving issue or if children of the testator survived him. The remaining judge decided that the only estate created in the daughter was a fee tail estate and that the testator died intestate in regard to the reversion. Neither theory in regard to the condition was relevant in that the donee in tail was an aged woman with no natural children and was the sole surviving child of the testator. The court held that the testator's reversion arising from the creation of the fee tail estate had descended at his death to his children then living and vested in them. Since the reversion was vested, those children who had assigned the reversion to the Cincinnati Union Stockyard Company had made effective conveyances.

Clearly, both the *Gibson* and *Richardson* decisions have upheld the existence of a descendible, devisable, assignable and alienable reversion as it existed at common law following the enactment of the statute *de donis*. Common-law fee tail estates and their incidents subsisted in full force in the United States prior to the Revolution and still exist in those states where they have not been abolished, including Ohio. Kent's Commentaries, *supra,* at pages

14, 15; *Carroll* v. *Olmsted, supra* (16 Ohio St. 251); *Pollock* v. *Speidel, supra* (17 Ohio St. 439); *Gibson* v. *McNeely, supra,* and *Richardson* v. *Cincinnati Union Stockyard Co., supra.*

In accordance with the undisputed authority that the interest created in the grantor of a common-law fee tail estate is a vested reversion, and in view of the decisions to the effect that the Ohio enactment restricting fee tail estates does not alter the fundamental nature of the estate tail in the first donee in tail, we hold that such reversions are vested estates fully descendible, devisable and alienable *inter vivos.*

As a result, in the present case, the series of conveyances begun by Henry Long's deceased son, Jesse Long, were effective to convey his one-third reversionary interest in the property to appellee Howard W. Long, and Esther Naomi Long, one-sixth to each.

As to Henry Long's son, Edward Long, who died intestate, his one-third reversionary interest in the property descended, one-half or a one-sixth share to his son, appellee Howard W. Long, and the other one-half interest or one-sixth share to his other son, Eugene Long. Eugene Long died testate in 1966, specifically devising his estate including the one-sixth share of the reversion to his wife, appellant Bessie Long.

As to Henry Long's daughter, Emma Long Olinger, who died intestate, her one-third share of the reversion descended to her son, appellee Paul H. Olinger.

The present ownership of the realty in question rests, therefore, in the following undivided interests:
1. Esther Naomi Long, wife
    of Howard W. Long ....one-sixth (from Jesse's portion)
2. Howard W. Long (Appellee)....one-sixth (from Jesse's portion)
    and ...........one-sixth (from Edward's portion)
Howard W. Long's Total
Interest is .............. one-third

3. Bessie Long (Appellant) .... one-sixth (from Edward's portion)
4. Paul H. Olinger ...... one-third (Emma Long Olinger's portion)

These are further indicated by the diagrammatic chart appended hereto.

It should be noted that this distribution is consistent with that expressed in the minority opinion of the Court of Appeals for Darke County, written by Judge Sherer. It is not the precise distribution contended for by the appellant. The appellant urged that, although Henry Long's will contained no general residuary clause, Item IV thereof evidences a clear intention on the part of the testator that no part of the residue of his estate, including the reversion in the fee tail estate granted to Jesse Long, should pass to any of his children unless that child had issue. Appellant maintains, therefore, that Jesse Long did not qualify and no part of the reversion passed to him but passed, one-half to Emma Long Olinger and by descent to her son, appellee Paul H. Olinger, one-half to Edward Long, one-fourth descending to Howard W. Long and one-fourth descending to Eugene Long, devised by him to his surviving spouse, appellant Bessie Long. For reason of the foregoing, this contention has no merit. The Probate Court and Court of Appeals are correct in the holding that Item IV does not constitute a general residuary clause capable of transferring any of Henry Long's interest in the property in question. *Oglesbee* v. *Miller* (1924), 111 Ohio St. 426.

The judgment of the Court of Appeals is, therefore, reversed and judgment entered in accordance with this opinion.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

APPENDIX

HENRY LONG
(Died Testate 1932)

EMMA LONG OLINGER
(Died Intestate 1954)

EDWARD LONG
(Died Intestate 1946)

JESSE LONG
(Died Intestate 1974)

(QCD)
1/3

ROSELLA LONG
(Died Testate)

(D)
1/3

JOHN BROWN-ETHEL BROWN

(QCD)
1/3

PAUL H. OLINGER
(EE)

1/3

EUGENE LONG
(Died Testate 1966)

(D)
1/6

BESSIE LONG
(Spouse) (ANT)

1/6

HOWARD LONG
(EE)

1/6 + 1/6 = 1/3

ESTHER N. LONG
(Spouse)

1/6

TOTAL
INTEREST

SOLID LINES INDICATE LINEAL DESCENT
DOTTED LINES INDICATE COURSE OF REVERSION
UNLESS OTHERWISE INDICATED IN PARENTHESES REVERSION PASSES BY DESCENT
(D) PASSING BY DEVISE
(QCD) PASSING BY QUITCLAIM DEED
(ANT) APPELLANT
(EE) APPELLEE