GILLAM, APPELLEE, *v.* GILLAM ET AL., APPELLANTS.

(No. 394—Decided December 5, 1979.)

Messrs. *Young & Jones* and *Mr. Fred E. Jones,* for appellee.

Messrs. *Acton, Dunn, Busch & Flack* and *Mr. Robert C. Acton,* for appellants.

BETTMAN, J.   On his death in December of 1973, Harold C. Gillam left a will which was duly admitted to probate. In pertinent part, the will provided:

"*ITEM TWO:* I give, bequeath, and devise all of my farm property, and my farm livestock and equipment to my son, Wilford E. Gillam, of South Vienna, Ohio, *in trust,* nevertheless, upon the following terms and conditions and for the following uses and purposes:

"My said trustee shall have full power and authority to manage and operate my said farm property, making all necessary decisions therefor, and shall pay over the net income therefrom quarterly or oftener [*sic*] to my wife, Alma L. Gillam, for and during her natural life. In the event, however, that it should become either desirable or necessary to sell my

said farm property during the life of my said wife, I then direct that my said trustee shall have the privilege of sale without any order of court and upon the terms and conditions which, on consultation with my said wife, he may deem most suitable. After all costs and expenses of any such sale shall first have been met, I then direct that the proceeds therefrom shall be distributed as follows:

"A one-third part to my said wife, Alma L. Gillam, to be hers absolutely.

"The remaining two-thirds part thereof to my children, Helen E. Gerard of Jamestown, Ohio, Wilford E. Gillam, of South Vienna, Ohio, and Lois J. Hanson of Atlanta, Georgia, to be theirs absolutely, share and share alike.

"*ITEM THREE:* In the event that my said real property has not been sold during the life of my said wife, Alma L. Gillam, on her death, I then direct that my said trustee shall sell all of my said farm property, together with any remaining livestock and equipment, in the same manner and with the same powers as already provided for herein, and distribute the proceeds thereof to my children, Helen E. Gerard, Wilford E. Gillam, and Lois J. Hanson, share and share alike. My said trust estate shall then terminate."

Alma L. Gillam, plaintiff-appellee, was the second wife of the testator and the aunt of the testator's three children, Wilford E. Gillam, Lois J. Hanson and Helen E. Gerard, defendants-appellants. Appellee, finding that her income pursuant to Item Two of her husband's will was paid irregularly and was inadequate for her needs, requested Wilford E. Gillam, as trustee, to sell the farm pursuant to his power to do so under said Item Two. He advised her that in his opinion such sale was neither desirable nor necessary and refused her request.

Appellee then commenced this action, praying the Court of Common Pleas of Clinton County for a sale of the property pursuant to R. C. 5303.21, the disentailment statute. After hearing, the trial court found that the sale of said real estate would be to the benefit of appellee, Alma Gillam, the person holding the first and present estate, and that such sale would not do substantial harm to appellants, the remaindermen. The court ordered the premises sold "pursuant to the provisions of Section 5303.21 *et seq.* of the Ohio Revised Code." Appellants

thereupon appealed to this court assigning as error that the judgment was contrary to law and against the manifest weight of the evidence.

R. C. 5303.21 provides:

"In an action by the tenant in tail or for life, or by the grantee or devisee of a qualified or conditional fee, or of any other qualified, conditional or determinable interest, or by a person claiming under such tenant, grantee, or devisee, or by the trustee or beneficiaries, if the estate is held in trust, courts of common pleas may authorize the sale of any estate, whether it was created by will, deed, or contract, or came by descent, when satisfied that such sale would be for the benefit of the person holding the first and present estate, interest, or use, and do no substantial injury to the heirs in tail, or others in expectancy, succession, reversion, or remainder. This section does not extend to estates in dower."

The issue, then, is whether the evidence supports the conclusion of the trial court that the sale of the farm would be "for the benefit of" appellee and "do no substantial injury to" appellants.

The evidence was uncontradicted, except for Alma Gillam's opinion that the sale would be of great benefit to her and not injure appellants and Wilford E. Gillam's opinion that the sale would do substantial injury to appellants and be of slight, if any, benefit to appellee. The farm had been valued in the testator's estate at $150,000, and, according to expert testimony, was at the time of hearing worth approximately $200,000. Land values in the area had been steadily increasing and were expected to continue to do so. According to one expert, income from farm properties tended to be low in relation to the value of the land, and income losses were always possible.

During the three and one-third years that the trust had been in existence, income payments to appellee had been irregular. They totalled $16,200, or an average of approximately $5,000 per year. If a sale of the farm netted $200,000, the proceeds could be invested by a bank trust department at six and three-quarters percent interest, or $13,500 per year. The trustee (appellant Wilford E. Gillam) was unable to pay income quarterly because the income from the farm came in irregularly. Since the trustee lived out of town, it was necessary for

him to employ an agent, at a ten percent commission, to collect the rent from the farm house and to oversee repairs. The land itself was sharecropped on a fifty-fifty basis.

Concluding as we do, for the reasons hereinafter set out, that appellee is entitled to the income for life from the proceeds of the sale of the premises, she would obviously benefit from regularizing and doubling her income; and, the trial court so found. As noted, R. C. 5303.21 also requires a finding that the sale would do no substantial injury to appellants.

Although counsel during argument indicated that the trial court's entry was unclear, it is apparent that the court's conclusion, that a sale would do no substantial injury to appellants, was based on its interpretation of the will and its conclusion that, under the provisions of R. C. 5303.26, 5303.27 and 5303.28, the proceeds of the sale would be paid over to Wilford E. Gillam, as trustee, with the income from the trust payable to appellee for life and the principal distributed to the appellants upon her death. This is the only rational basis for the court's finding that a sale would do no substantial injury to the appellants as remaindermen. It defies reason to conclude that where the remaindermen are to completely inherit a steadily appreciating asset on the death of an 82-year-old life beneficiary, they would not suffer substantial injury if the property were sold, prior to the death of the life beneficiary, so that they then received only two-thirds of the proceeds.

The trial court must have concluded, as we do, that a sale under court order pursuant to R. C. 5303.21 results in a mere substitution of assets. Such is the purpose of the statute. As stated in *Schneider* v. *Wolf* (1929), 120 Ohio St. 524, 528-529, in its analysis of the predecessor to the present statute:

"***The plain, manifest policy of the Legislature was to provide a means, safe to all interested, of changing the character of the property entailed from real estate into money or its equivalent through a judicial sale, duly made and confirmed by the court, to the end that all interests might be segregated, preserved, and enjoyed by the several owners thereof, not in defiance of the provisions of the will, but strictly in accord with the terms of the will, and the statute imposes upon the court, in the most emphatic terms, duties that must be observed by the court in accomplishing these results, so as to safeguard the interests of all. The money takes the place of the property,

while the title to the property is freed from the entanglements which may otherwise embarrass its sale and transfer for years to come.***"

Furthermore, R. C. 5303.26 mandates that the proceeds of the sale be treated no differently than the land itself. R. C. 5303.26 provides as follows:

"All money arising from a sale of an estate described in section 5303.21 of the Revised Code, for purposes of descent, succession, reversion, or remainder, has the same character and is governed by the same principles as the estate sold, and passes according to the terms of the deed, will, or other instrument creating the estate."

We conclude, as the trial court must have, that it was the testator's intent, under Item Two of the will, to divide his property so that his wife received one-third of the proceeds and so that his children received the remaining two-thirds, only in the event that his son, as trustee, exercised his privilege to voluntarily sell the property. Item Two does not contemplate a forced sale or a sale by order of court; it contemplates only a voluntary sale by the trustee, when he deems such sale desirable or necessary, from the point of view of all parties.

Item Two of the will provides that in the event the trustee deems it either desirable or necessary to sell the farm, he has the privilege of doing so without any order of court and, after consultation with the testator's wife, on such terms as he deems suitable. Item Two goes on to state that "***[a]fter all costs and expenses of any *such sale*** have [first] been met, I then direct that the proceeds *therefrom* shall be distributed***" (emphasis added) so that his wife receives one-third and his children receive two-thirds.

The sale ordered herein by the trial court was not "such sale," but a forced sale, which is analogous to a sale under threat of eminent domain or a taking by eminent domain. Hence, the proceeds of the sale under the court's order in this case are not the proceeds "therefrom," as provided for in Item Two. The provisions of Item Two, then, relating to distribution, are not applicable to the proceeds of the sale in this case. Under the provisions of R. C. 5303.21 *et seq.*, the proceeds of the sale must be held by the trustee, just as the land originally

was, with the income payable to appellee for life and the remainder, on her death, to appellants.

The only evidence of any substantial injury to appellants by the sale of the farm was the trustee's legally erroneous conclusion that a sale would result in the loss to appellants of one-third of the principal. The trial court, having apparently concluded that this was legally erroneous, was justified in its finding that a sale would do no substantial injury to the appellants.

For these reasons, we find that the assignment of error is not well taken and affirm the judgment of the trial court.

Our brother, Judge Black, in his dissent, concludes that the legislature did not intend R. C. 5303.21 to be applied to trusts, where the trustee has a power of sale. While respecting his historical analysis of the purpose of disentailment statutes generally, we find no language in R. C. 5303.21 on which such a distinction can be grounded. The statute simply states that the action may be brought "***by the trustee or beneficiaries, if the estate is held in trust, [and that the] courts of common pleas may authorize the sale of any estate, whether it was created by will, deed, or contract, or came by descent***."

Additionally, this court specifically held in *State, ex rel. Ehmann,* v. *Schneider* (1946), 78 Ohio App. 27, 32, that the power of a Court of Common Pleas to authorize a sale of the property, as is set forth in G. C. 11925 *et seq.* (G. C. 11925 is the predecessor of the present disentailing statute), "***is expressly made to extend to real estate held in trust created by will."

We recognize the importance of settlors and testators possessing the right to repose confidence in trustees; but, we doubt that vesting a power of sale in the Court of Common Pleas, when that court determines that a sale would benefit the life tenant and do no injury to the remaindermen, will have the dire results anticipated by the dissent. In any case, the legislature has given the Court of Common Pleas that power.

*Judgment affirmed.*

KEEFE, P. J., concurs.

BLACK, J., dissenting.  I respectfully dissent.

As explained in detail below, R. C. 5303.21 was never intended to apply generally to all estates in trust; it has a narrow and specific purpose, and the broad, unlimited interpretation

given the section by my brothers will play havoc with the law of trusts.

Our earlier decision in *State, ex rel. Ehmann,* v. *Schneider* (1946), 78 Ohio App. 27, did not consider the point at issue herein because it was not raised in that case. The question there was whether the Probate Court had jurisdiction over a testamentary trust to the exclusion of the Court of Common Pleas. I find it impossible to determine from the reported decision whether the trust in that case was one to which R. C. 5303.21 would apply, using the interpretation set forth, *infra.*

In the case *sub judice,* the Court of Common Pleas did not have subject matter jurisdiction to dispose of the case under R. C. 5303.21. Although no objection was made about subject matter jurisdiction in the court below or in this court, I believe that we should consider this jurisdictional defect *sua sponte.* See *Wellston* v. *Morgan* (1898), 59 Ohio St. 147.

I would reverse the judgment below, but I would remand the case for further proceedings to determine whether this action may be maintained as a declaratory judgment action under R. C. Chapter 2721. As hereinafter set forth, appellee alleges, in the alternative, that the trustee abused his discretion in refusing to sell. Whether this question belongs exclusively in the Probate Division of the Court of Common Pleas, under R. C. 2101.24, is a matter I would not decide on this record.

The purpose of R. C. 5303.21 is suggested by its title, "Sale of entailed and other estates." That purpose is to provide a procedure for the immediate sale and transfer of real estate where such sale and transfer would otherwise be prevented by future interest encumbrances. Such an encumbered estate might be an estate tail, a life estate, a qualified or conditional fee or other determinable interest. Briefly, the statute's genesis is based upon the public policy against restraints on alienation. Modern conveyancing does not often include the creation of such future interest encumbrances. Examples include a grant by deed or will to A for life, remainder to B; or to A, the heirs of his body and assigns forever; or to A so long as he lives in Ohio, remainder over to B, his heirs and assigns forever. These are legal life estates or legal fees in tail or conditional fees. They tie up the title of the property for a period of indefinite duration, and they are not

favored. In fact, the grant of an estate in tail has been converted by statute into an estate in tail in the first donee and an absolute estate in fee simple in his issue, thus eliminating the old reversion to the heirs of the original donor upon failure of issue, except where the first donee in tail dies without issue. R. C. 2131.08(A).

R. C. 5303.21 *et seq.* provide a method whereby the person in possession of such a limited estate, or any person claiming under him, can petition the Court of Common Pleas for a sale of the real estate; and, if the statutory guidelines are met (benefit to the present holder and no substantial injury to the others in expectancy or succession), the court may order the property sold. The proceeds will be disposed of as required in the original document creating the estate, but the statutes set forth provisions for investment of those proceeds and the appointment of trustees responsible to the court for that investment and for the management and distribution of the "estate." R. C. 5303.21 through R. C. 5303.30. A similar procedure has been available since 1859. See *Nimmons* v. *Westfall* (1877), 33 Ohio St. 213; *Oyler* v. *Scanlan* (1877), 33 Ohio St. 308. Cf. *Pollock* v. *Speidel* (1867), 17 Ohio St. 439. Prior to the general statute, disentailment of lands was provided by special statutes. *Carroll* v. *Lessee of Olmsted* (1847), 16 Ohio 251. R. C. 5303.21 *et seq.* set forth a detailed statutory scheme for the preservation, in substance, of the future interest even though the original land may have been sold.

The error below was that the statutory scheme was applied to an equitable life estate held in trust; however, under my interpretation of the legislative purpose of R. C. 5303.21, the statute was never intended to apply to the trust *sub judice.* The error was induced by the provision in R. C. 5303.21 for an action to sell property "***by the trustee or beneficiaries, if the estate is held in trust***." I maintain that any suit by trustees or beneficiaries must be limited to real estate titles held in trust so as to be inalienable for periods of indefinite duration. For instance, the grantor of an *inter vivos* trust, or the testator in his will, might give land to T to hold in trust for A for life, expressly without power of sale during A's life, remainder over to others. Such a title falls within the class of titles intended to be subject to judicial sale under the statutory scheme.

The correct interpretation is that the legislature did not mean to extend the scope of R. C. 5303.21 to cover any and all trusts in which an equitable life estate or other conditional, qualified or determinable equitable interest is created. To do so would enlarge the statutory scheme far beyond its original purpose and subvert the traditional flexibility of the trust as a means of making future dispositions of property without tying up title for an indefinite period.

One of the valued rights of a property owner, long maintained under the law of trusts, is to repose his entire confidence in a trustee to hold, manage and distribute property for the benefit of others, and to define the trustee's duties and obligations: The grantor may give the trustee any guidelines for the grantor's purposes within a wide area of approved delegation, the dimensions of which have been established over the centuries. He may, for instance, give the trustee broad discretion to sell property and to invest the proceeds, broad enough to allow the trustee to do anything that might be done by an individual owner, without reference to statutory limitations, such as the necessity of a suit for authority to sell or a legal list of investments or periodic reports to a court.

None of this flexibility is available to such a trustee who is deemed subject to R. C. 5303.21 *et seq.* He will lose his discretion about when, to whom, or how to sell the real estate, because the court will make those decisions. The original grant of discretion will be absolutely and finally destroyed. The grantor's provisions concerning the investment of proceeds and private reports will also be tossed aside. Public reports will have to be made in contravention to the grantor's provision for private reports only.

If R. C. 5303.21 is extended so as to apply to all trusts containing a life estate or other qualified interest, irrespective of the alienability of legal title by the trustee, the law of trusts will suffer a disastrous blow. I conclude that the legislature did not intend to wreak such havoc by enacting R. C. 5303.21.

At the same time, the statute can and should apply to trusts in which the sale and transfer of real estate is denied for periods of indefinite duration, *i.e.*, those in which the trustee is given no power of sale or is prohibited from selling the real estate. *First National Bank* v. *Wilder* (1966), 8 Ohio Misc. 43;

*Mendenhall* v. *Leyland* (1936), 6 Ohio Opinions 47; *Prysi* v. *Prysi* (1936), 6 Ohio Opinions 259.

A beneficiary who is aggrieved by the actions of a trustee (on the one side), or a trustee who is impeded by directions that are either too restrictive or too ambiguous to allow the trust purposes to be accomplished (on the other side), has a number of alternative remedies available. I need not make an exhaustive list of these alternatives and only suggest their range by mentioning the following: a will construction suit under R. C. 2107.46 or 2721.05; a suit for mismanagement of a testamentary trust under R. C. 2101.24(D) or 2109.49; or a suit for instructions under the equitable jurisdiction of the court. The question of whether a trustee has abused the discretion granted in the original instrument may be tested in court by traditional procedures less drastic than destroying the original grant of wide discretion and substituting therefor the court's judgment.

In the instant case, the appellee sought a review of the trustee's conduct because she alleged an abuse of discretion in her complaint and asked for rectification of that abuse. This allegation raises entirely different issues than those considered by the majority in its misapplication of R. C. 5303.21. Accordingly, the cause should be remanded for consideration of the issue of abuse of discretion and for consideration of other alternative remedies.

The single assignment of error has merit, in my opinion, insofar as it claims that the judgment below was contrary to law, because the trial court did not have jurisdiction for its final order under R. C. 5303.21. I would reverse that judgment and remand this cause for further proceedings.